UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH SHORT,

    Plaintiff,

v.

GERDAU MACSTEEL, INC.,

    Defendant.
_____/

Case No. 14-12678

HON. DENISE PAGE HOOD

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT [Docket No. 17]

This matter is before the Court on Defendant Gerdau Macsteel, Inc.'s ("Defendant") Motion for Summary Judgment [Docket No. 17, filed April 16, 2015]. Plaintiff Keith Short ("Plaintiff") filed a response opposing the motion [Docket No. 19, filed May 7, 2015]. Defendant filed a reply to the response [Docket No. 20, filed May 15, 2015]. A hearing on Defendant's Motion was held on June 24, 2015.

I.    **BACKGROUND**

Plaintiff was employed by Defendant's predecessor from March 16, 1990 until 2008, when Defendant purchased the steel manufacturing facility. Defendant continued to employ Plaintiff as a Mechanical Project Engineer until it laid off

Plaintiff for five months in 2009. Defendant brought Plaintiff back in December 2009 as a Maintenance Shift Supervisor and, beginning in 2010, he was the supervisor for two areas of the facility (the "Rolling Mill" and the "Machine Shop"). Plaintiff received merit raises in at least 2010 and 2011. In 2012, Defendant hired David Bussell ("Bussell") as Plaintiff's supervisor.

In Plaintiff's 2012 and 2013 performance reviews, he was given the rating of "below expectations." Other maintenance supervisors received the same rating and in July 2013, all the maintenance supervisors were rated "below expectations." On January 29, 2014, Bussell placed Plaintiff on a Performance Improvement Plan ("PIP"). Plaintiff's PIP was to "run for just more than **60 days** Beginning on **January 29, 2014]** and ending on **March 7, 2014.** Immediate and continuous improvement is required throughout this time period."[1] [Docket No. 17-10, PgID 121 (emphasis in original)] The PIP lists four areas of concern and three performance issues, but it does not specify tasks or goals for Plaintiff. *Id.* The PIP states that "[f]ailure to [complete the items detailed above and maintain that improvement] will result in further discipline, up to and including the termination of your employment." *Id.* Plaintiff testified at his deposition that he disputed all of the concerns and performance issues regarding the PIP during a meeting with

---

[1] According to Bussell, March 7, 2014 was a typo. [Docket No. 17, PgID 347 ("That's a typo. That should have been the end of March.")] Plaintiff agreed that the PIP was to last for 60 days. [Docket No. 19-2, PgID 436]

Bussell on or about February 14, 2014, and that he previously had disputed Defendant's complaints regarding his performance in meetings on November 6, 2013 and January 29, 2014. [Docket No. 19, PgID 382-85; Ex. 1, at 139, 150-51, 156, 158-62]

At Plaintiff's request, Plaintiff and Bussell met regarding the PIP and Plaintiff's satisfaction of PIP goals on March 18, 2014, even though the PIP was to remain in effect for at least 1½ weeks longer. At that meeting, Plaintiff requested to know what Defendant was going to decide when the PIP was over. Bussell maintains that Plaintiff demanded to know Plaintiff's status *vis a vis* satisfaction of the PIP at that meeting and, because Plaintiff insisted, Bussell informed Plaintiff that if Bussell had to make a decision on that day, his decision would be to terminate Plaintiff. On March 19, 2014, Defendant notified Plaintiff that he was being terminated, effective March 21, 2014.

Defendant states that it terminated Plaintiff for poor performance based on Plaintiff's failure to meet the requirements listed in his PIP. Plaintiff, who was 55 years old when he was terminated, believes Defendant terminated him because of his age. On July 29, 2014, Plaintiff filed the instant cause of action and asserted two claims against Defendant: (1) Count I - Age Discrimination, in violation of Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 261, et. seq., and (2) Count II - Intentional Infliction of Emotional Distress ("IIED").

## II. STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce

evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

### III.   ANALYSIS

#### A.   ADEA Claim

*1. The Law*

The ADEA prohibits employers from discharging an employee (or otherwise discriminating against any employee with respect to his or her compensation, terms, conditions, or privileges of employment) because of the employee's age. *See* 29 U.S.C. § 623(a)(1). In order for the employer to be liable, Plaintiff's "age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000) (internal quotations omitted). Plaintiff may prove his discrimination claim by direct or circumstantial evidence. *Allen v. Highlands Hospital Corp.*, 545 F. 3d 387, 394 (6th Cir. 2008); *LeFevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012).

Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Lautermilch v. Findlay Schs.*, 314 F.3d 271, 275-76 (6th Cir. 2003). The *McDonnell Douglas* burden-shifting framework is not utilized in direct evidence cases. *Geiger v. Tower Automotive*, 579 F.3d 614, 621 (6th Cir. 2009). Instead, the Court must assess the following four factors in considering whether there is direct evidence of age discrimination: (1) were the statements made by a decision maker, (2) were the statements related to the decision-making process, (3) were the statements more than vague or isolated remarks, and (4) were the statements made proximate in time to the termination. *Peters v. Lincoln Elect. Co.*, 285 F.3d 456, 478 (6th Cir. 2002).

When a claim is based mainly on circumstantial evidence, courts utilize the *McDonnell Douglas* burden-shifting framework. *Geiger*, 579 F.3d at 622 (citations omitted). The first step requires that Plaintiff prove a *prima facie* case of age discrimination. To establish a *prima facie* case of age discrimination, Plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment decision; (3) he was otherwise qualified for the job or promotion; and (4) he was replaced by someone outside the protected class. *See Blair v. Henry Filters, Inc.*, 505 F. 3d 517, 528 (6th Cir. 2008); *Geiger*, 579 F.3d at 622-23 (citations omitted).

If the plaintiff establishes a *prima facie* case, the burden is shifted to the employer to "produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Reeves*, 530 U.S. at 142. Once a legitimate, non-discriminatory reason is offered, "the *McDonnell Douglas* framework with its presumptions and burdens disappear[s] and the sole remaining issue is discrimination *vel non*." *Id.* at 142-43 (internal quotations and citations omitted). In other words, once a defendant offers a legitimate, nondiscriminatory reason, Plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for the discrimination.

A plaintiff can prove that the defendant's legitimate, non-discriminatory reason is mere pretext by showing that the reason: (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *See Wexler v. White*, 317 F. 3d 564, 576 (6th Cir. 2003). "[A] jury may consider the reasonableness, or lack thereof, of an employer's business judgment, insofar as it may assist in determining the employer's state of mind." *In re Lewis*, 845 F. 2d 624, 633 (6th Cir. 1988). Lastly, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 147.

### *2. No Direct Evidence of Age Discrimination*

Plaintiff contends that he has demonstrated that there is direct evidence of age discrimination. Plaintiff testified that, at the March 18, 2014 meeting, one day before Defendant terminated Plaintiff on March 19, 2014, Bussell stated, "As long as you've been here and what your pay is[,] you should know what's required of you to hold your position" and "Your pay is up there among the higher ones." [Docket No. 19, Ex. 1, at 198, 200-201]  Those statements clearly were: (a) made by a decision maker (Bussell), (b) related to the decision-making process, as they were made in the March 18, 2014 meeting at which Plaintiff's PIP evaluation and Plaintiff's termination were discussed, and (c) proximate in time to the notification of his termination, which occurred the following day.

Plaintiff argues that these "are not 'vague' statements because they can only be interpreted to refer to Plaintiff's age." [Docket No. 19, PgID 387]  Defendant asserts that the Bussell comments are not discriminatory on their face, and the Court agrees. The Sixth Circuit has held that comments made by a supervisor that: (1) an employee had "been in his job too long" and, (2) another employee was "lazy and didn't work and wasn't doing his job and had been there too long" were "ambiguous because they could just as easily refer to tenure" as opposed to age. *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 287 (6th Cir. 2012). *See also Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 455-56 (6th Cir. 2007) (supervisor's

repeated comment that plaintiff "ha[d] been around since Christ was a baby" referred to plaintiff's tenure rather than age bias and required an "inferential step . . . to equate [the] comment about Skelton's tenure with the department—or his age—with unlawful discriminatory animus").

Although the Court finds that the two statements made by Bussell <u>could</u> be interpreted to be comments regarding Plaintiff's age, neither statement specifically references Plaintiff's age. The statements "could as easily refer to [Plaintiff's] tenure" as to his age, and they could be interpreted to mean that Plaintiff has been around long enough to understand that someone getting paid as much as he is needs to produce more. *Blizzard*, 698 F.3d at 287; *Skelton*, 249 F. App'x at 454-55. The Court concludes that Bussell's comments do not require the conclusion that Defendant discriminated against Plaintiff. *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010) (in the context of a retaliation claim, the court concluded there was not sufficient evidence to support a direct discrimination claim when a supervisor stated "besides, you would probably have trouble keeping up with the younger guys . . . here [in this division]," when the supervisor offered to recommend the plaintiff for another division).

For the reasons stated above, the Court: (a) concludes that Plaintiff has not demonstrated that the comments by Bussell were not vague or isolated, and (b)

9

finds that Plaintiff has not established a *prima facie* case of direct discrimination on his ADEA claim.

### 3. Viable Claim of Age Discrimination Based on Circumstantial Evidence

With respect to establishing a *prima facie* claim based on circumstantial evidence, Defendant concedes (for purposes of its summary judgment motion) that Plaintiff is a member of a protected class and that his employment was terminated, *i.e.*, Plaintiff has satisfied the first two elements of his *prima* facie case. Defendant argues, however, that Plaintiff cannot establish that he was qualified for the position from which he was terminated or that he was replaced by some person(s) outside the protected class.

Defendant points to several instances prior to the issuance of the PIP where Plaintiff was notified of his performance deficiencies. Defendant cites Plaintiff's 2012 and 2013 mid-year and annual reviews, meetings Plaintiff had with his immediate supervisor in 2012 (Mechanical Supervisor, Donnie Thornsberry). Defendant asserts that this evidence demonstrates Plaintiff was having performance problems for years and that Bussell was not the only person who had concerns regarding Plaintiff's performance.

The Court is not persuaded by Defendant's argument. First, the Sixth Circuit has held that the:

> court may not consider the employer's alleged nondiscriminatory reasons for taking an adverse employment action when analyzing the

> *prima facie* case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.

*Wexler*, 317 F.3d at 574 (internal citations omitted). Despite acknowledging that the nondiscriminatory reasons for terminating Plaintiff cannot be used to analyze whether Plaintiff has satisfied his *prima facie* case, Defendant's arguments do exactly that. Second, the record demonstrates that, beginning in 2009, Plaintiff performed as a Maintenance Shift Supervisor in two facilities for several years. Third, it is undisputed that Plaintiff was awarded merit-based bonuses in at least 2010 and 2011. The Court concludes that the fact that Defendant employed Plaintiff for many years, including as the supervisor at the Rolling Mills and the Machine Shop areas of Defendant's facility, demonstrates that Plaintiff was qualified to perform the duties he was assigned. The Court further concludes that Plaintiff has satisfied the first element of a *prima facie* case of age discrimination based on circumstantial evidence.

Defendant next argues that Plaintiff cannot satisfy the fourth element because: (a) Plaintiff was not replaced, and (b) even if he was replaced, the persons who assumed his duties were members of the same protected class. Defendant contends that Plaintiff was not replaced because his duties were redistributed among the other Maintenance Supervisors. Defendant cites to *Blizzard*, 698 F.3d at 283-84, where the court stated:

> [A]n employee's assumption of a terminated co-worker's job duties does not constitute replacement for purposes of an ADEA claim. A person is not replaced when . . . the work is redistributed among other existing employees already performing related work. Rather, a person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

Defendant relies on the testimony of Bussell, who stated that Plaintiff's Rolling Mills duties were taken over by Donnie Thornsberry from March 2014 until May 2014, then by Kent Gasche until July 2014, when Thornsberry assumed those duties again. Defendant states that Paul Newsome took over Plaintiff's Machine Shop duties. Defendant represents—and Plaintiff does not dispute—that Thornsberry, Gasche, and Newsome are all over 40 and members of the same protected class as Plaintiff.

At his deposition, Plaintiff stated that Thornsberry, Gasche and Joe Carrabino replaced him. In his response brief, however, Plaintiff argues that, although Defendant may have initially "redistributed" Plaintiff's job duties to Thornsberry, Gasche, and Newsome, Defendant ultimately hired two persons to work as maintenance supervisors: Todd Benge, age 38, and Michael Wood, age 32. [Docket No. 19-8, PgID 610] According to Defendant's interrogatory answers, Todd Benge was hired on July 28, 2014 as Maintenance Turn Supervisor, and Michael Wood was hired on September 8, 2014 as Maintenance Shop Supervisor Mechanical. [Docket No. 19-9, PgID 618]

Defendant correctly argues that Plaintiff cites no authority for his argument that Plaintiff must be considered to have been "replaced" by the younger employees taking over the duties that Plaintiff had that were redistributed to Thornsberry, Gasche, and Newsome. Defendant, however, fails to cite any authority for its argument that if an employer causes other workers to absorb a terminated employee's duties in the short-term, the terminated employee's case is precluded even when Defendant hires someone outside the terminated employee's class to replace the terminated employee on a permanent basis. As Plaintiff suggests, if Defendant could simply redistribute Plaintiff's duties to persons of the same protected class in the short-term (which likely happens immediately after most terminations), an employer could avoid ADEA liability simply by engaging in a short-term "shell game" after terminating an employee.

Defendant argues that the record evidence confirms that Wood did not ultimately acquire any of Plaintiff's job duties and Benge was employed with Defendant for less than one month. Defendant also argues that Plaintiff ignores that other Maintenance Supervisors who are older than Plaintiff remain employed with Defendant. Defendant, however, cites no authority that Plaintiff's claims are precluded even if its arguments are accurate. The Court finds that these arguments go to the weight of the evidence—they do not obviate the fact that Plaintiff has

presented evidence that persons under 40, *i.e.*, of a different class, were hired to perform duties that Plaintiff had performed.

For the reasons stated above and viewing the facts in a light most favorable to Plaintiff (as the Court must for purposes of Defendant's motion for summary judgment), at this stage of the proceedings Plaintiff has established a *prima facie* case of age discrimination because he has presented evidence that: (1) he was 55 years old during the relevant time, (2) he was terminated, (3) he was qualified for the job, and (4) Defendant hired two employees younger than 40 to perform his duties.

Defendant argues, and Plaintiff does not dispute, that it has offered a legitimate, non-discriminatory reason for Plaintiff's termination. The Court finds that Defendant has met its burden of asserting a legitimate, nondiscriminatory reason by: (1) claiming that Plaintiff was terminated for poor performance, and (2) offering evidence that Plaintiff failed to satisfy the requirements listed in his PIP.

Plaintiff contends he has presented sufficient evidence to create a genuine issue of material fact as to whether Defendant's reason was mere pretext. The Court agrees. First, as discussed above, the remarks made by Bussell (Plaintiff's supervisor and the person who made the ultimate decision to terminate Plaintiff) at the March 18, 2014 meeting could be interpreted as being age-related in a manner that supports a finding of age discrimination. Second, the evidence that two

younger employees were hired to perform duties Plaintiff had performed supports a challenge to Defendant's legitimate non-discriminatory reason for Plaintiff's termination. Third, although the PIP provided that termination was possible if its terms were not met, the PIP did not list any terms or goals that could be met. Fourth, Plaintiff has offered evidence that the basis for, and Defendant's evaluation of his performance pursuant to, the PIP were not warranted. For example, the record reflects that Plaintiff, like several other Maintenance Supervisors, received a "below expectations" rating in 2012 and received a "below expectations" rating for midyear 2013, but none of the other Maintenance Supervisors receiving the "below expectations" rating in midyear 2013 were terminated. Although Defendant argues that the comments made in the other Maintenance Supervisors' evaluations differentiates them from Plaintiff, the Court finds that Defendant's argument bears on how the evidence should be weighed, not whether Plaintiff has created a genuine dispute of material fact. The Court concludes there is a genuine dispute of material fact as to whether Defendant's legitimate business reason was pretext for age discrimination.

For the reasons stated above, the Court finds that the circumstantial evidence in the record establishes a genuine dispute of material fact as to whether Defendant impermissibly terminated Plaintiff on the basis of his age, in violation of the

ADEA. Defendant's Motion for Summary Judgment is denied with respect to Plaintiff's ADEA claim.

**B.     IIED Claim**

The Michigan Supreme Court has not explicitly recognized a tort for intentional infliction of emotional distress, *Smith v. Calvary Christian Church*, 462 Mich. 679, 686, n.7 (2000), but it has recognized that such a claim can be made under the standard described in the Second Restatement of Torts. In order to state an intentional infliction of emotional distress claim pursuant to the Second Restatement of Torts standard, a plaintiff must show: (1) "extreme and outrageous" conduct; (2) intent or recklessness; (3) causation; and (4) that he suffered "severe emotional distress." *Robert v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985). Conduct is sufficiently outrageous only "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 603 (quoting Restatement Torts, 2d., § 46, comment d, pp. 72-73). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient. *Id.* "[T]he trial judge [initially] decide[s] whether defendant's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress." *Sawabini v. Desenberg*, 143 Mich.App. 373, 383 (1985) (citation omitted).

Defendant contends that the IIED claim fails because Plaintiff's termination, even if discriminatory, does not rise to the level of extreme and outrageous conduct under the facts presented. Plaintiff does not address the issue anywhere in his response, except in a footnote where he states that he "also has an attendant state law claim for Intentional Infliction of Emotional Distress." [Docket No. 19, PgID 381, n.1]. The Court finds that Plaintiff has not provided evidence that would support an allegation that Defendant's (Bussell's) conduct was outrageous or extreme, nor does the Court find any conduct in the record that would support a finding that any of Defendant's conduct "go[es] beyond all possible bounds of decency, [or could] be regarded as atrocious, and utterly intolerable in a civilized community." *See Roberts*, 422 Mich. at 603 (citation omitted). The Court grants Defendant's Motion for Summary Judgment with respect to Plaintiff's claim for Intentional Infliction of Emotional Distress.

## V. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 17, filed April 16, 2015] is **DENIED** as to Plaintiff's ADEA claim in Count I and **GRANTED** with respect to Plaintiff's IIED claim in Count II.

DATED: March 31, 2016

s/Denise Page Hood
Chief Judge, U. S. District Court

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2016, by electronic and/or ordinary mail.

                                                    S/LaShawn R. Saulsberry
                                                    Case Manager